UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN R. EDWARDS,<br><br>    Plaintiff,<br><br>v.<br><br>MAGALLANES, et al.,<br><br>    Defendants. | Case No.: 1:16-cv-00975-SAB (PC)<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF DEFENDANTS<br><br>[ECF No. 37] |

Plaintiff Steven R. Edwards is appearing pro se in this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c), both parties have consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 7, 17.)

Currently before the Court is Defendants' motion for summary judgment, filed July 12, 2018.

**I.**

**BACKGROUND**

This action is proceeding against Defendants Magallanes, M. Grajeda, Dr. Moon, and McGraw for deliberate indifference to a serious medical need under the Eighth Amendment of the United States Constitution.

Defendants filed an answer to the complaint on July 27, 2017. On July 28, 2017, the Court issued the discovery and scheduling order.

As previously stated, on November 7, 2018, Defendants filed a motion for summary judgment. Plaintiff filed an opposition on November 19, 2018. Defendants did not file a reply. Therefore, Defendants' motion for summary judgment is deemed submitted for review without oral argument. Local Rule 230(l).

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

///
///
///
///

# III.
# DISCUSSION

### A. Summary of Plaintiff's Complaint

On the early morning of March 18, 2015, Plaintiff began vomiting and having severe stomach pains. Plaintiff's cellmate yelled, "man down," and kicked the door to get the attention of prison staff.

After approximately five to ten minutes, Sergeant Magallanes responded to Plaintiff's cell door and asked "what's wrong, what's the problem[?]" Plaintiff explained that he was vomiting and had stomach pain as if "it was on fire and ripping apart." Magallanes said admit to me that you've been drinking pruno or show me some blood in your puke. Plaintiff told Magallanes that he did not drink, but Magallanes told Plaintiff to fill out a slip to see doctor or admit that he was drinking or had blood in his puke. Sergeant Magallanes never returned to Plaintiff's cell.

On the next morning, March 19, 2015, Plaintiff was wheeled by ADA care taker Hauseur to the medical clinic on 3C yard and was meet by officer Jackson.

Upon information and belief, on May 2, 2015, after Plaintiff had an interview with Lieutenant R. Juarez, he was told that if he didn't forget about the inmate appeal, Juarez would just say that E. Magallanes contacted the medical staff at correctional treatment center and they will agree he called and told him that Plaintiff could see the doctor the next day. However, Magallanes never returned to Plaintiff's cell on March 18, 2015, and never contacted the correctional treatment center.

Upon information and belief, Lieutenant Juarez said he talked to someone in TTA (treatment, triage and assessment). Registered Nurse, Grajeda said he told Magallanes that Plaintiff could see the nurse or go to the nurses line the next day, without evaluating Plaintiff's situation or medical condition to see if it was an emergency.

Registered Nurse McGrew took Plaintiff's vitals and after looking at Plaintiff stated "What's wrong I can see that your skin is pale and your face and you['re] a dark skinned person." Plaintiff explained that he was in major pain and was vomiting and couldn't keep anything down. Plaintiff stated his stomach felt on fire, and McGrew stated "I know it hurts, but there's nothing I can do." McGrew then told Plaintiff to wait outside the door to see the doctor, and Plaintiff received some pills for vomiting and pain.

| | |
|---|---|
| 1 | When Plaintiff was approached by Dr. Moon, he stated "What's wrong with you" in a rude |
| 2 | manner, and stated "there is nothing wrong with you" before he even evaluated Plaintiff.  Dr. Moon |
| 3 | then told Plaintiff to drink a lot of water in front of him to see if Plaintiff would throw it up.  Dr. Moon |
| 4 | then told Plaintiff, "why are you wasting my time Edwards there is nothing wrong with you, and I will |
| 5 | have you written up for faking and causing problems."  Plaintiff insisted that his stomach was in pain |
| 6 | and he needed to be evaluated by an outside doctor, to which Dr. Moon stated "get out." |
| 7 | On March 20, 2015, Plaintiff was seen by Registered Nurse McGrew who indicated that |
| 8 | Plaintiff's blood pressure and fever were high, and Plaintiff responded that his pain was 7 out of 10. |
| 9 | McGrew stated "I'm sorry, but I can't do anything for you and I can't send you to A.C.H. right now, |
| 10 | but you look better than yesterday, just keep tak[ing] the pills I gave you."  When Plaintiff indicated |
| 11 | that he needed to see a doctor and get x-rays or "something", McGrew told him "[t]he doctor didn't |
| 12 | say to do so." |
| 13 | Later that day, Plaintiff fell down in the dayroom and was taken to the medical clinic and then |
| 14 | to Mercy Hospital to have his gallbladder removed.  Plaintiff remained in the hospital until March 27, |
| 15 | 2015.  Plaintiff was informed by the hospital doctor that he had Pancreatitis and Cholecystitis which |
| 16 | lead to his gallbladder having to be removed. |
| 17 | After Plaintiff return to prison, he was released back to the 3C01-111 yard and did not receive |
| 18 | antibiotics until two days thereafter.  Plaintiff received his first dose of antibiotic on March 30, 2015. |
| 19 | On April 1, 2015, Plaintiff was seen by Dr. Moon in the medical clinic, and Plaintiff explained |
| 20 | that he was still having pain in his stomach.  Dr. Moon stated, "I don't have anything here saying you |
| 21 | had surgery" because he did not have Plaintiff's medical file.  Dr. Moon told Plaintiff to get on the |
| 22 | table and to pull up his shirt, and when he looked at Plaintiff's stomach he told him to "get out." |
| 23 | On April 8, 2015, Plaintiff was seen by physician assistant, Chetana Sisodia, who advised |
| 24 | Plaintiff that nothing was going to happen to Plaintiff if he did not have protection covering his |
| 25 | stomach. |
| 26 | On April 16, 2015, Plaintiff noticed a small knot forming on his right thigh below his buttocks, |
| 27 | and it began to grow over the next couple days. |
| 28 | |

On April 19, 2015, Plaintiff's leg was swollen and appeared infected. Plaintiff went to the clinic and was immediately taken to the emergency room and evaluated by Dr. Wang and registered nurse Balaba. Plaintiff was provided medication.

On April 20, 2015, Plaintiff's leg was again swollen and he was in pain. Plaintiff eventually went to the medical clinic and registered nurse McGrew said "what is it this time," to which Plaintiff indicated that there was puss coming out of his leg. Plaintiff showed McGrew his leg and Plaintiff was sent to Mercy Hospital.

On April 21, 2015, Plaintiff had surgery to remove the abscess, and Plaintiff was released on April 23, 2015.

**B.     Statement of Undisputed Facts**

1.     On March 22, 2015, Plaintiff underwent surgery to remove his gallbladder after suffering an infection that led to Cholecystitis. (Declaration of Dr. Moon ¶ 3 [hereinafter "Moon Decl."].)

2.     In February of 2015, Plaintiff sought medical attention for stomach pain and nausea. He was admitted to the Correctional Treatment Center where he was diagnosed with acute gastritis. Edwards underwent tests for inflammation and Pancreatitis which all displayed normal results.[1] ( Moon Decl. ¶ 4.)

3.     At 7:55 a.m. on March 19, 2015, Plaintiff requested medical attention for stomach ache and vomiting during the night, that he believed could be food poisoning. Plaintiff was seen by Dr. Moon who prescribed anti-nausea medication and Tylenol. (Moon Decl. ¶ 5.)

4.     On the morning of March 20, 2015, Plaintiff was seen by Registered Nurse McGraw for a progress check-up. (Moon Decl. ¶ 5.)

5.     At 7:15 p.m. on March 20, 2015, Plaintiff was seen by Corcoran medical staff for worsening symptoms including a fever of 100.1 degrees and right-sided abdominal tenderness. Plaintiff was sent to Mercy Hospital for testing. (Moon Decl. ¶ 6.)

---

[1] Plaintiff disputes the fact that Dr. Moon declared that Plaintiff suffered from flu following his discharge from the Correctional Treatment Center, and submits that the actual medical notes reflect follow up "f/u" on hospital discharge. (Opp'n at 2, ECF No. 32.) Such dispute is immaterial to the allegations at issue in the instant.

6. After two days of testing and evaluation, Plaintiff underwent laparoscopic cholecystectomy to remove the gallbladder at Mercy Hospital on March 22, 2015. Plaintiff was discharged from the hospital on March 27, 2015. (Moon Dec. ¶ 7.)

7. On April 1, 2015, Plaintiff was seen by Dr. Moon for a follow-up after his surgery. (Moon Decl. ¶ 8.)

### C. Defendants' Motion for Summary Judgment

Defendants argue that Plaintiff received appropriate and extensive medical treatment in prison, as well as a prompt referral to an outside hospital when his physical condition worsened. Any minor delay in obtaining medical attention for Plaintiff's initial stomach symptoms does not rise to the level of deliberate indifference. In addition, Dr. Moon and Registered Nurse McGrew actively evaluated and treated Plaintiff's complaints regarding his stomach and nausea.

Plaintiff argues that the denial of medical attention by Sergeant Magallanes and Registered Nurse Grajeda was not minor but was deliberate indifference. In addition, Dr. Moon and Registered Nurse McGrew did not actively evaluate and treat Plaintiff's complaints about his stomach pain and vomiting. Both of these Defendants refused to send Plaintiff to the Correctional Treatment Center ("CTC") for testing and possible transportation to a hospital.

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective

recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference. Snow v. McDaniel, 681 F.3d at 987, overruled in part on other grounds, Peralta v. Dillard, 744 F.3d at 1082-83; Wilhelm v. Rotman, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

### 1. Defendants Magallanes and Grajeda

Defendant Grajeda declares that she does not recall whether Sergeant Magallanes telephoned her during the March 18-19, 2015, shift regarding Plaintiff's medical condition. (Grajeda Decl. ¶ 4.)

With regard to Defendant Magallanes, it is undisputed that he responded to Plaintiff's call for medical attention in his cell during his March 18-19, 2015, shift. Defendant Magallanes admitted that he sought medical attention for Plaintiff at approximately 1:00 a.m. on March 19, 2015, and defers to medical providers as to what was done by them. (Def. Magallanes Req. for Admis. No. 14; ECF No. 30, Ex. F.)

Defendant Magallanes argues that Plaintiff's allegations in his complaint acknowledge that he called Registered Nurse Grajeda, the head nurse on duty, who told him that Plaintiff could wait to get medical attention at nurse's line the next day. However, in his opposition, Plaintiff argues that it was only

It is unclear whether Plaintiff believes Defendant Magallanes contacted Defendant Registered Nurse Grajeda on the date in question. Nonetheless, this fact is immaterial to resolving the instant motion because the delay of six to seven hours did not lead to further physical injury as is necessary under the Eighth Amendment. See Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990). Defendant Grajeda declares that she has not recollection of a medical emergency occurring during the

night of March 19, 2015, regarding Plaintiff.[2] (Grajeda Decl. ¶ 4.) However, Grajeda declares the following with regard to the standard procedures when receiving a call for medical advised by custody staff:

> When I receive a call in the clinic after hours regarding the medical status of an inmate and I am briefed on their condition, I use my professional judgment to determine whether there is a medical emergency that requires immediate medical attention. If there is not a medical emergency and the inmates condition is stable, then I determine whether they should be immediately taken for medical treatment or if they can wait until the morning for attention.
>
> Symptoms resembling gastroenteritis, commonly referred to as the stomach flu, include water, usually non-bloody diarrhea, abdominal cramps and pain, nausea, vomiting or both, occasional muscle aches or headache, and a low-grade fever. Viral Gastroenteritis (stomach flu), Mayo Clinic:https://www.mayclinic.org/diseases-conditions/viral-gastroenteritis/symptoms-causes/syc-20378847. Depending on the cause, viral gastroenteritis symptoms may appear within one or three days after you're infected and can range from mild to severe. Id. Symptoms usually last just a day or two, but occasionally they may persist as long as 10 days. Id. Adults should seek medical attention if they [are] unable to keep liquids down for 24 hours, vomiting has lasted more than two days, they are vomiting blood, there is blood in their bowel movements, or they have a fever above 104 degrees Fahrenheit. Id.
>
> If an inmate was suffering from a stomach ache and vomiting during the night but did not exhibit symptoms such as vomiting blood or a severe fever, then it may be appropriate to wait until the morning to take the inmate to the medical center for treatment. An inmate suffering stomach issues for a few hours, that he believes to be food poisoning, would not need immediate medical attention and could safely wait until the morning hours to be seen by medical staff.
>
> To the extent that Edwards claims that I ignored a medical emergency, I would not have. I have no recollection of a medical emergency occurring during the night of March 19, 2015 regarding inmate Edwards. Had I received a call regarding an inmate's medical condition, I would have assessed his medical needs using my professional judgment. Had I believed there was a need for immediate medical attention, I would have provided it. If I thought it could safely wait until morning when there are more doctors present, I would have done that as well. If an inmate presents with vomiting and stomach pain, or other symptoms resembling a common stomach bug, it probably can safely wait until morning.

(Grajeda Decl. ¶¶ 1-4.)

While Plaintiff disputes whether Defendant Magallanes called Defendant Grajeda on the date in question, there is no genuine issue of fact that the delay of approximately six to seven hours did not

---

[2] Defendant Grajeda references the date as March 19, 2013, instead of March 19, 2015. The Court presumes this to be a typographical error, as the events at issue in this clearly action took place in 2015, not 2013.

result in harm to Plaintiff. Six to seven hours is not a length of delay under the circumstances presented here that meets the constitutional threshold for deliberate indifference based on a delay in medical treatment. It is undisputed that on March 19, 2015 at 7:55 a.m., Plaintiff was seen by Registered Nurse McGraw and Dr. Moon regarding his symptoms of vomiting and stomach ache. (Moon Decl. ¶ 5, Ex. CDCR 00084.) McGraw checked Plaintiff's vitals and determined that he did not have a fever. (Moon Decl. ¶ 5, Ex. CDCR 00084.) Dr. Moon then saw Plaintiff and prescribed Phenergan, an anti-nausea medication, and Tylenol. (Moon Decl. ¶ 5, Ex. CDCR 00084.) Dr. Moon saw no signs of any problems with Plaintiff's gallbladder nor did he suspect any such problem. (Moon Decl. ¶ 5.) Further, the following day, Plaintiff's progress was checked. (Moon Decl. ¶ 5, Ex. CDCR 00087.) Dr. Moon declares that Plaintiff appeared to be recovering well, was walking upright, and attending normal activities despite having some stomach discomfort and a slight fever of 99.4 degrees. (Moon Decl. ¶ 5.) Dr. Moon opined that Plaintiff likely was suffering from viral gastroenteritis, which is a common and simple illness like a cold. (Moon Decl. ¶ 5.) Accordingly, under the circumstances here, there is no showing that the delay of six to seven hours led to further injury to Plaintiff, and Defendants Magallanes and Grajeda are entitled to summary judgment.

    2.    <u>Defendants McGraw and Moon</u>

As discussed above, deliberate indifference is a high legal standard. <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th Cir. 2004). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be shown") is insufficient to establish an Eighth Amendment violation. <u>Farmer v. Brennan</u>, 511 U.S. 825, 836-37 & n.5 (1994). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances … and … that they chose this course in conscious disregard of an excessive risk to plaintiff's health." <u>Jackson</u>, 90 F.3d at 332 (internal citations omitted).

It is undisputed that on the morning of March 19, 2015, Plaintiff requested medical attention for stomach ache and vomiting during the night, that he believed could be food poisoning. Defendant McGraw checked Plaintiff's vitals and determined that he did not have a fever. (Moon Decl. ¶ 5.) Plaintiff was seen by Dr. Moon who prescribed Phenergan, anti-nausea medication and Tylenol. (<u>Id.</u>)

Dr. Moon did not see any signs of any problems with Plaintiff's gall bladder nor did he suspect such problems. (Id.)

Then, on the morning of March 20, 2015, Plaintiff was seen by Registered Nurse McGraw for a progress check-up. (Moon Decl. ¶ 5.) Plaintiff appeared to be recovering well, was walking upright, and attending normal activities despite having some stomach discomfort and a slight fever of 99.4 degrees. (Id.) At that point, Dr. Moon suspected that Plaintiff was likely suffering viral gastroenteritis, which is a common and simple illness like a cold. (Id.)

Plaintiff declares the following with regard to his claims against McGraw and Dr. Moon:

On the morning of March 19, 2015 on or about 7:55 a.m. I was wheel chaired over to the hobbyshop/medical clinic, through the back door into the waiting area by A.D.A. Worker Hauseur), after going down in the Dayroom in 3C01 at Corcoran C.S.P., I was pushed into the office where RN McGr[a]w was sitting at her desk and asked [m]e was I there for a follow-up or did I put in a 7362 Medical Form. I then told RN McGr[a]w that I was there for a medical emergency and not a follow-up. I was then told to fill out a 7362 medical [f]orm by RN McGr[a]w[.]

I then started explained [sic] to [McGraw] about how my stomach was burning and hurting really bad and vomiting while filling out the medical form 7362. While McGr[a]w started checking my vitals she looked at my skin and [stated] "your skin is pale for a dark skinned person" and that "It's probably food poisoning", so I put I think its food poisoning. Then I handed the 7362 Medical Form to McGr[a]w, she then turned to me and said, I know it hurts but I can't do anything for you, but I will see if [I] can get some pills for the vomiting and Tylenol for the pain. McGr[a]w then walked out the room then told me and A.D.A. [w]orker Hauseur to go back to the waiting area.

McGr[a]w then walked over to Dr. Moon's office and told him something he then got up and walked over to where I was sitting in a wheelchair and said, "what is wrong with you, there is nothing wrong with you", I didn't even get to say a word. I then explained to [D]r. Moon that I had been vomiting all night, and that my stomach and side hurting [sic] bad and burning[.] Dr. Moon then told me to drink this water, I began to drink the water and started to get nauseous and leaned over as if to vomit, and A.D.A. Hauseur grab [sic] a trash can to prevent me from vomiting on the floor[.]

Dr. Moon then told A.D.A. Hauseur to, "Shut up, Mind your business and there's nothing wrong with him." Dr. Moon then went on a rant telling me that, "there is nothing wrong with you, stop faking your wasting my time[.]" I continued to plea with Dr. Moon telling him that I had a serious medical need, medical attention and wanted to see the doctor at C.T.C. (Correctional Treatment Center). Dr. Moon then told me and A.D.A. Hauseur to "get out, now" and had officer Jackson remove us by walking both of us out his [sic] office through the backdoor.

> On March 20, 2015, I was called over to the Hobbyshop/Medical Clinic and was seen by Rn McGr[a]w, she asked me as soon as I came in to the office, ["]how did you get to the office," I told her that "I walked over." McGr[a]w looked at me and said, "so that means that you are feeling better," I told her, "No, [I]'m still in pain," she then asked me what was my pain level[.] I told her, "7 out of 10," she looked at me then said, "let me take your vitals," while taken [sic] my vitals, McGr[a]w looked at my skin and stated, "well your skin looks better than yesterday," then finished my vitals.
>
> McGr[a]w then sat down in her chair and started writing on the Inter disciplinary notes, I then asked her what was my vitals, she told me "well your blood pressure is up, as well as your temperature[.]" I then asked McGr[a]w "what was it" my vitals. McGr[a]w then stated, "99.4, it's just slight fever nothing to get alarmed about." At that point I started asking for a Doctor, and RN McGr[a] told me, "I can't cause the doctor didn't say to do so," and to keep taken [sic] the Medication[.] I then asked RN McGr[a]w if she could call C.T.C. so that I could see the doctor over there, because I was told to tell medical staff if this happened again, look it up, McGr[a]w told me, "you have to leave now," so I got up and slowly walked out and went to my building and to cell and [laid] down.

(Declaration of Plaintiff, ¶¶ 5-10; ECF No. 31.) (citations omitted).

Based on the evidence before the Court, Plaintiff has failed to demonstrate that Defendants McGraw or Moon consciously disregarded an excessive risk to Plaintiff's health. According to Plaintiff's evidence, his condition was not treated because he did not have sufficient signs of a serious medical condition, i.e. Cholecystitis, at the time he was examined by McGraw and Moon. Plaintiff had only a slight fever and it appeared to both McGraw and Moon that his symptoms were improving. Indeed, Defendants have presented evidence and it is undisputed that the common symptoms of Cholecystitis include nausea, vomiting, fever, bloating, jaundice, severe pain in the upper right or center abdomen, and tenderness over the abdomen when it's touched. (Moon Decl. ¶ 6; What is Cholecystitis, WebMD (June 25, 2018), http://www.webmd.com/digestive-disorders/what-is-cholecystitis#1.) Cholecystitis can come on suddenly or it can be a long-term problem. Id. In addition, Cholecystitis is easy to mistake for other health problems. Id. If left untreated, it can lead to serious, sometimes life-threatening complications, such as gallbladder rupture. (Moon Decl. ¶ 6; Cholecystitis Symptoms and Causes, Mayo Clinic:https://www.mayclinic.org/diseases-conditions/cholecystitis/symptoms-causes/syc-20363867?p=1.) Treatment for cholecystitis often involves gallbladder removal. Id. It was because of the acute (and not chronic) onset of Plaintiff's Cholecystitis that gallbladder removal was necessary. (Ex. A, AG054.)

Plaintiff admits that Defendant McGraw informed him that he was likely suffering from food poisoning, such allegations, at most, demonstrate that she indeed was harboring under a misdiagnosis, and not deliberate indifference. Further, it is clear that McGraw examined Plaintiff and then sought advice from Dr. Moon. Such actions cannot and do not demonstrate deliberate indifference on the part of McGraw. Moreover, Plaintiff was treated by Dr. Moon for his stomach ache and nausea, and there were no signs of an acute infection as of March 19, 2015. Based on Plaintiff's evidence, Dr. Moon believed there was nothing seriously wrong with Plaintiff. Even if Dr. Moon was negligent and misdiagnosed Plaintiff, such actions do not give rise to a constitutional claim for deliberate indifference.

With regard to Plaintiff's progress check up on April 1, 2015, Plaintiff again fails to demonstrate subjective awareness. Dr. Moon saw Plaintiff on April 1, 2015 for post-surgery check-up and there were no signs of complications. Indeed, Plaintiff's allegations demonstrate that Dr. Moon examined his stomach and ordered a further check-up in the following week. (Pl.'s Opp'n to Stmt. of Facts ¶ 14; ECF No. 32.) ("… if you look at the primary care provider progress note you will see that he [Dr. Moon] looked at [Plaintiff's] stomach, taping on it, and did a diagram …") There is no evidence to support Plaintiff's claim that Dr. Moon was deliberately indifferent on April 1, 2015. While Plaintiff may not have agreed with the examination on this date, Plaintiff's disagreement does not give rise to a constitutional claim for deliberate indifference. Snow v. McDaniel, 681 F.3d at 987, overruled in part on other grounds, Peralta v. Dillard, 744 F.3d at 1082-83; Wilhelm v. Rotman, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d at 332.) Accordingly, Defendants' motion for summary judgment shall be granted.

///
///
///
///
///
///
///

**IV.**

**ORDER**

Based on the foregoing, it is HEREBY ORDERED that:

1. Defendants' motion for summary judgment is granted; and

2. The Clerk of Court is directed to enter judgment in favor of Defendants Magallanes, M. Grajeda, Dr. Moon, and McGraw, thereby terminating this action.

IT IS SO ORDERED.

Dated: **December 5, 2018**

UNITED STATES MAGISTRATE JUDGE